UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.                                      Case No. 6:10-cv-1923-Orl-GAP-DAB

SHELLY R. COKER, JAMES DAVID
OSBORNE, and BELINDA A. KEELS,
individually and as parent, guardian and next
friend of A. L., a minor, and
A. L., a minor, individually,

    Defendants.

_____

## MEMORANDUM OF LAW OF PLAINTIFF STATE FARM IN OPPOSITION TO DEFENDANT COKER'S MOTION FOR SUMMARY JUDGMENT

Defendant, Shelly R. Coker's, ("Coker") motion for summary judgment (Doc. 46), should be denied and the Plaintiff State Farm Mutual Automobile Insurance Company's, ("State Farm"), motion for summary judgment granted (Doc 47) because Coker was in the possession of the vehicle ("the Osborne truck") owned by Defendant James David Osborne, ("Osborne"), for each part of the 42 consecutive days prior to the date she was involved in the automobile accident while operating Osborne's truck. When the undisputed facts surrounding the circumstances of the presence of the Osborne truck at Coker's residence during the applicable time frames are applied to the language of the subject policies of insurance it becomes unquestionable that the Osborne truck is excepted from the policies' definitions of "non-owned car" and thus there is no coverage for the November

9, 2008 subject motor vehicle accident.

Before discussing in detail why Coker's motion for summary judgment should be denied State Farm first draws the Court's attention to a potential jurisdictional issue that is brewing with this declaratory judgment action. Thus, at the outset this memorandum of law contains a brief discussion of the potential jurisdictional issue which is then followed by the arguments in opposition to Coker's motion for summary judgment.

I. **THE POTENTIAL JURISDICTIONAL ISSUE:**

This action is a declaratory judgment action brought by State Farm pursuant to Section 2201 of Title 28 of the United States Code seeking a declaration of the rights and obligations of the Plaintiff and the named Defendants in regards to two policies of automobile insurance State Farm had issued to Coker. This is solely an action for declaratory relief and no complaint for damages has been made by any party except by way of Coker's affirmative defense for prevailing party attorney's fees under Section 627.428 of the Florida Statutes.

This declaratory judgment action raises, generally speaking, two issues: 1) does State Farm have a duty to defend Coker against allegations made against her in a complaint filed by Keels against Coker in the Florida Circuit Court; and 2) does State Farm have a duty to indemnify Coker as to any damages she may ultimately have to pay in satisfaction of those complaints by Keels. On January 18, 2012, the Florida Circuit Court dismissed, with prejudice, Keels' complaints against Coker. (A copy of that order is attached hereto as Exhibit "A"). Under Florida law, Keels has 30 days to file a notice of appeal of the dismissal. If she does not notice an appeal from the dismissal order then

questions regarding the duties to defend and indemnify may likely be rendered moot.[1] In other words, if there is no appeal of the order of dismissal (Exhibit A) in the underlying tort case against Coker then any declaratory judgment by this Court will likely concern whether there is a duty to defend or a duty to indemnify a non-existent lawsuit; in other words it will be primarily a hypothetical declaratory judgment.

Because of the cases and controversies requirement of Article III of the United States Constitution, the Declaratory Judgment Act, 28 U.S.C.§ 2201, specifically provides that a declaratory judgment may be issued only in the case of an actual controversy. Malowney v. Federal Collection Deposit Group, 193 F. 3d 1342, 1347 (11th Cir. 1999). A continuing controversy may not be conjectural or hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative, threat of future injury. Malowney 193 F. 3d at 1347. As well, a case or controversy must exist not only at the time of the filing declaratory judgment action, but it must also exist also throughout the pendency of the declaratory judgment action. Id.

Conference between State Farm's counsel and Coker's counsel over this brewing issue of the case potentially becoming moot issue has revealed a difference of opinion as to whether there will be an actual case in controversy if Keels does not notice an appeal from the dismissal of the underlying lawsuit. Should Keels not appeal the dismissal of the tort case Coker will likely contend that because Section 627.428 of the Florida Statutes provides that an insured who prevails on declaratory judgment action brought by an insurer

---

[1]
State Farm and Coker filed the cross-motions for summary judgment in this action on January 13, 2012. Thus, in an unfortunate twist of fate as to calendaring, these briefs in opposition to the cross-motions for summary judgment are due to filed just prior to the expiration of Keels' time to possibly notice an appeal.

may recover attorney's fees there remains an actual case in controversy as to whether Coker's can recover an award of attorney's fees. State Farm, on the other hand, believes that the United State Supreme Court has indicated that an interest in prevailing party attorney's fees "is, of course, insufficient to create an Article III case or controversy where none exist on the merits of the underlying claim." Lewis v. Continental Bank Corp. 494 U.S. 472, 480 (1990). As the Supreme Court has cautioned:

> [W]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs.

Lewis, 494, U.S. at 480. Here, if the dismissal of the underlying tort case is not appealed by Keels there will never be a duty to indemnify. As well, if it is not appealed then there is no longer a complaint to defend and thus a likelihood of no remaining question about the duty to defend. As this memorandum is written, it is not known if Keels will appeal the dismissal of the underlying tort case. Until that is known there remain ripe issues about the duties to defend and/or indemnify. Thus this action is not moot at this time, but given an increasing likelihood that it may become moot, State Farm believed it necessary to alert the Court to this brewing issue that may come to the forefront of this case in the near future.

II. **COKER IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE SHE WAS IN POSSESSION OF THE OSBORNE VEHICLE FOR EACH OF THE CONSECUTIVE 42 DAYS PRIOR TO NOVEMBER 9, 2008, SUBJECT MOTOR VEHICLE ACCIDENT.**

To briefly recap for sake of convenience, Mr. Osborne was admitted to an in-patient

4

rehabilitation facility on September 23, 2008. At that time he owned a 1999 Chevrolet pickup truck (the Osborne truck) which was left at Ms. Coker's residence on September 23, 2008 when Osborne was admitted to the rehabilitation program. It remained in the driveway of her residence until November 9, 2008 when Coker moved the truck into the street to access her garage and was involved in an accident in front of her residence when she was moving it. Keels' minor daughter was occupying the vehicle that was involved in the accident with the Osborne vehicle. Keels then brought suit in the Florida circuit court on behalf of herself and her minor daughter against, *inter alia,* Coker seeking tort damages for injuries allegedly sustained by Keels' minor daughter in the November 2008 accident.

Coker did not own the Osborne truck and the Osborne truck was not listed as an insured automobile on either of the insurance policies Coker had with State Farm at that time. Thus, under the facts applicable to these transactions for there to be insurance coverage under the policies of insurance issued by State Farm to Coker the Osborne truck must be a "non-owned car" as that term is defined in the two policies issued to Coker.[2] If

---

2

Coker was insured at the time of the accident by two similar policies issued to her by State Farm; one covering a Chevrolet Avalanche she owned and the other covering a Volkswagen she owned. Both the Avalanche and Volkswagen policies read, in pertinent part that a:

Non-owned car does not include a:

. . . .

2. Car which has been operated or rented by or in the possession of an insured during any part of each of the last twenty-one or more consecutive days. If the insured is an insured under one or more other car policies issued by us, the twenty-one day limit is increased by an additional twenty-one days for each such additional policy.

A non-owned car must be a car in the lawful possession of the person operating it.

(Doc. 47-1, p. 5; Doc. 47-2, p.5)

the Osborne truck meets the definition of a non-owned car as set forth in the policy then there is coverage. If the Osborne truck does not meet the definition of a non-owned car as defined in the terms of the policy then there is no coverage. In this case the answer comes down to whether the Osborne truck is excepted from the policies' definitions of a non-owned car owing to it having been (or not have been) in the possession of Coker during any part of each of the 42 consecutive days preceding the accident. If it was in her possession there is no there is no coverage, but if it was not in her possession then there is coverage.

Coker's argument that she is entitled to summary judgment and State Farm is not entitled to summary judgment may be summarized from the following excerpt from her motion for summary judgment:

> Coker got custody of Osborne's truck when he left it in her driveway for safekeeping while he was in drug rehab. She had mere custody of the vehicle for an extended period of time. On the date of the accident when she decided she needed to move the truck to clean out her garage, she had a reasonable belief that she had the right to take physical possession of and move the truck. Thus, Coker's use of the vehicle meets the legal possession requirement of the policy.

(Doc. 46 at p. 24).[3] There are, however, undisputed facts from which this Court can determine that Coker, as a matter of law, had possession of the Osborne truck. These include, among others, the facts that:

---

[3]
In other words, Coker argues that her personal charge of or her management or control over the Osborne truck did not amount to possession until the date of accident and then, on that date, converted to possession. This inconsistency is discussed in more detail later in this memorandum.

- Coker had keys to the Osborne truck on each day between September 23, 2008 and November 9, 2008;

- the Osborne truck was in Coker's driveway at all times between September 23, 2008 and the date and time (November 9, 2008) of the subject motor vehicle accident;

- Osborne was in an in-patient rehabilitation treatment center during the entirety of this time frame and thus removed from actual physical control over the truck;

- Coker operated the Osborne truck on the date of accident; and

- the Osborne truck was at Coker's residence during the applicable time frames because Osborne could "trust" Coker, and hd no one else to leave the truck with.

(Doc. 48, pgs. 7, 8, 16, 20, and 30). Under the definition given to the term possession by the Florida Supreme Court these facts amount to possession as a matter of law.

A. **The Florida Supreme Court Has Defined Possession and the Facts of Coker's Involvement With the Osborne Truck During the Days Preceding the November 9, 2008 Accident Amount to Possession of the Osborne Truck.**

Coker cites a bevy of cases from other states which she contends support her position that she had mere custody as opposed to possession of the Osborne truck. Before discussing why those cases are distinguishable it must first be noted that there is simply no reason to look to cases from other jurisdictions to predict how the Florida Supreme Court would decide the present dispute. In other words, it is unnecessary to examine how the appellate courts in Texas, Vermont, Rhode Island, Minnesota, West Virginia, Oregon and Maine, just to name a few, would determine this case. This is because the Florida Supreme Court has stated that "possession" means "having personal charge of or exercising the right of ownership, management, or control over the item in

7

question." See Reynolds v. State, 92 Fla. 1038, 1041, (111 So. 2d 285, 286) (1926); Tingley v. Brown, 380 So. 2d 1289, 1290 (Fla. 1980). And, the Florida Supreme Court has stated that this "definition is clear . . . (and neither) vague nor ambiguous." Tingley, 380 So. 2d at 1291. Under this Florida definition of possession as applied to the facts of the instant dispute no doubt is left that Coker had possession of the Osborne truck on each of the consecutive 42 days prior to the November 9, 2008 motor vehicle accident.

First, she had personal charge of the vehicle not only on the date of accident but on each of the 42 consecutive days before the accident. She had personal charge because Osborne, going into an in-patient rehabilitation facility, specifically left the truck with Coker because he could "trust her". (Doc. 48, p. 15). He was physically removed from the truck and left it with her for safe keeping. (Doc. 48, p. 16). ("it was not bothering (Coker) to have it sit there, and (Osborne) had no other place to take his vehicle . . ."). At that time the truck was in her physical possession.

Second, she had management or control over the truck. She had keys to the Osborne truck, not only on the date of accident, but on each of the 42 consecutive days prior to the accident. The Osborne truck was garaged at her house not only on the date of accident, but also on each of the 42 consecutive days prior to the accident. (Doc. 48, pgs. 16-17). It was specifically left there by Osborne because he could trust Coker with it while he was undergoing the in-patient treatment. (Doc. 48, p. 16) Mr. Osborne, of course, had no physical control over the vehicle while he was in an in-patient rehabilitation facility, and as Coker testified "(Osborne) had no other place to take his (vehicle). . ." (Doc. 48, p. 15). Thus, it was Coker who had control, management and personal charge of Osborne's truck as it sat there in her driveway under her watch and care. In other words, between

September 24, 2008, and November 9, 2008, Coker had ***personal charge of*** the Osborne truck, and on each of the days during that time frame she exercised ***management or control over the truck***.

### B. The Policies' Use of the Term "Possession" Is Not Ambiguous.

On page 11 of her motion for summary judgment Coker argues:

> [p]ossession is a distinct legal term which is different from mere custody. Additionally, the term "possession" is ambiguous because the word has meanings in the law ranging from physical possession to constructive possession. Basically, the Florida authority on the term "possession" holds that it is a term of differing legal meanings and is different than mere custody. Additionally, when undefined, the term "possession" is ambiguous.

(Doc. 46, p.11)(case citations omitted). There are several problems with Coker's argument regarding ambiguity.

First, it ignores the Florida Supreme Court opinion in Tingley v. Brown, previously cited in this memorandum, which stated that the Florida Supreme Court's definition of "possession" is neither vague nor ambiguous.[4] 380 So. 2d at 1291. Second, it has no real explanation of how an ambiguity exists, i.e. how there are two reasonable readings of the policies with one providing coverage and the other not providing coverage. Coker then states that "when undefined, the term 'possession' is ambiguous," but makes that statement without reference to the well-settled proposition of Florida law that no ambiguity

---

[4] Tampa Pipeline Transport Co. v. Chase Manhattan Svc. Corp., 928 F.Supp. 1568, 1576 (M.D.Fla. 1995) makes reference to the term being potentially ambiguous. However, it is well-settled that "[t]he opinion of a district court carries no precedential weight even within the same district." U.S. v. Cerceda, 172 F.3d 806, 812, n. 6 (11th Cir. 1999); Lang v. Reedy Creek Improvement Dist., 888 F.Supp. 1143, 1147, n. 6 (M.D.Fla. 1995).

is created because a word in an insurance policy is undefined. See Deni Associates of Fla., Inc. v. State Farm Fire and Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998).

Third, Coker's argument regarding custody and possession seems to be underpinned by an assumption that custody and possession are mutually exclusive concepts, but that is not the case. Custody is a lesser species of management or control than is possession such that one in custody of personal property may also be in possession of it. In other words, as stated in several of the many cases cited by Coker the element of custody and control is involved in the term "possession." National Fire Ins. Co. v. Davis, 179 S.W.2d 316, 318 (Tex. App. 19944). In other words, "[p]ossession is inclusive of custody, but custody is not tantamount to possession." See Nat. Ins. Underwriters v. Melbourne Airways and Air College, 210 So.2d 267, 268 (Fla. 3rd DCA 1968); Gibson v. St. Paul Fire and Marine Ins. Co., 184 S.E. 562, 564 (W.V. 1936).

Here, any such distinction between custody and possession is irrelevant for purposes of insurance policy interpretation because Coker had possession of the Osborne truck, and possession is inclusive of custody. While she may have had custody of it as well, her management and control over the Osborne truck was more than mere custody and rose to the level of possession. Thus, any difference between these two related concepts has no bearing on this case. It seems as Coker is trying to paint a picture that her control or management over the Osborne truck was analogous to the control a delivery person has over a package or a car dealership's errand person has over a vehicle when giving a customer a ride to work. Coker's control and management of the Osborne truck far exceeded the parameters of mere custody and amounted to possession. As previously noted, she had her own key to the truck, it was in her driveway for over 42 days, its owner

had lived with her for the greater part of the previous seven years, and it was left there for her to keep watch over while Osborne was undergoing in-patient treatments because Osborne could trust Coker. And, on top of those facts, Coker admits she was in lawful possession of the truck on the date of accident (Doc. 46, p. 22), and, as is discussed in more detail later in this memorandum, on that date her management and control of the vehicle remained the same.

Fourth, there is no ambiguity created by way of the fact that the law recognizes several kinds of possession and recognizes that possession may be sole or joint. At all material times, Osborne had a possessory interest in his truck despite him having no physical control over it because he owned it and had title to it. That fact in no way negates Coker's management or control over the truck because possession may be sole or joint. See Black's Law Dictionary, Possession, p. 1163 (6th Ed. 1990).

### C. The Many Cases Cited By Keels Are Distinguishable From the Facts and Law Applicable to the Present Declaratory Judgment Action.

In most of the cases cited by Coker, the question was whether an insured parted with possession of a vehicle when another person either lawfully or unlawfully obtained physical control over the vehicle. For example, in National Fire Insurance Company v. Davis, 179, S.W. 2d 316 (Tex. App. 1944) a truck driver left his truck running while eating a meal at a roadside dinner. When he finished his meal the truck was found 500 yards uphill from where it had been stopped thus in a configuration that someone would have had to had moved as opposed to it rolling to the position where it was found. Property that was on the truck was damaged and the question was whether the damaged property was

"in the custody of the assured", National Fire Ins. Co., 179 S.W. 2d at 318. The court concluded that the word "custody" as used in a policy excluding damage to goods not in the custody of the assured meant "possession". Id. The court then held that though the driver's custody of the goods was temporarily interfered with, possession of the goods was not transferred to the possession of the person who moved the truck and thus, there was insurance coverage.

In Allen v. Brookshire Mut. Fire Ins. Co., 168 A. 698 (105 Vt. 471) (Vt. 1933) the insured owner of a vehicle permitted a prospective purchaser to take the automobile on a trial basis. Fourteen days later the insured went to the home of the prospective purchaser and told him that the car must be paid for or returned. An arrangement was worked out where the purchaser was to return the vehicle six days later to the insureds' garage. The ultimate question in that case was not whether the prospective purchaser had possession of the vehicle, but rather it was whether the insured had possession of the car. The court held that the insured still had possession of the car because though he may not have been in physical control of the vehicle, he still had an ownership interest in the car, i.e. he had constructive possession. Allen, 168 A. at 700. In reaching that conclusion, the Vermont court stated that "personal property in the hands of an agent or bailee has been held to be in the constructive possession or the bailor". Id. That case sheds no light on whether Coker had possession of the Osborne truck. At most, it would tell us that Osborne still had a possessory interest in the truck which he owned, but that of course is not an issue for this Court.

A large number of the cases cited by Coker on this custody/possession issue were similar in this regard to Allen in this regard. In Bennett Chevrolet Co. v. Bankers &

12

Shippers Ins. Co. of New York, 190 A. 863 (Rhode Island 1937), a valet or a purported valet stole a demonstrator vehicle from a car salesman. The question was not whether the valet/thief had possession, but rather the question was whether the insured auto dealer had parted with possession such that an exclusions excluding from coverage loss of property by the insured where he "voluntarily parts with title to or possession of any automobile . . . ". Bennett Chevrolet Co. 190 A. at 864. The cases of Gibson v. St. Paul Fire & Marine Ins. Co., 184 S.E. 562 (117 W.Va. 156) (W.V. 1936), Schutt v. Farmers Ins. Group of Companies, 79 P. 2d 1303 (129 Or, App. 401) (Or. App. 1994), Security Ins. Co. v. Sellers-Samons-Signor Motors Co., 235 S.W. 617 (Tex. App. 1921), and McConnell v. Fireman's Fund Ins. of San Francisco, 178 F. 2d 76 (5th Cir. 1950) (Ga. Law) all concerned questions of whether insureds whose automobile was stolen still had a possessory interests in the vehicle such that the insureds had possession of the vehicles. Such holdings shed no light on the issue of this case. Similarly, the cases of Aetna Cas, & Surety Co. v. Protective Ins. Co., 661 S.W. 2d 291 (Tex. App. 1983) and Lane v. The Hartford Ins. Group, 447 A. 2d 818 (Maine 1982) involved the question of whether persons directing a loading or unloading of cargo off of trucks were in possession of the truck because they were directing use of the vehicle merely for the loading and unloading process. Those cases, likewise, have no relevance to the question of whether Ms. Coker had possession of Osborne's truck during the applicable time frames.

In the cases cited by Coker for the proposition that she merely had custody of the Osborne truck, none of the persons in those cases had anywhere close to the personal charge of or the management and control over the vehicles in those cases as Coker had over the Osborne truck. For example, in National Fire Ins. Co., the truck was out of the

13

assured's control and was in the control of another no longer than it took the assured to go into inside the roadside dinner and have a meal. In Gibson, the thief that took the car from the insured was apprehended a short time after stealing the vehicle. 184 S.E. at 562. In Schutt, the person who stole the vehicle had been given it by the auto dealership for purposes of a simple test drive and mechanical inspection. In Aetna Cas. & Surety Co., the time that the possible possessor was possibly in custody or possession of the vehicle was merely the time it took to unload products off of the truck and that was also the case in Lane. Such temporary control of the vehicles in those cases comes nowhere close to the facts of this case in which Coker had her own key to the Osborne truck, had the Osborne truck in her driveway at her house for over forty-three days, and had been entrusted with the truck because she was someone Osborne could trust and because Osborne had no one else he could leave physical control over the truck. (Doc. 48, p. 16).

### D. The Facts of This Case Are Not Contrary to the Non-Owned Car Clause.

Coker argues that "Florida courts have recognized multiple times that the purpose of a non-owned automobile clause is to cover the insured while engaged in infrequent and casual use of an automobile other than one described in the policy." (Doc. 46 at p. 19) (citations omitted). The first problem with this argument by Coker is that none of the cases cited by Coker contains policy language identical of that in the State Farm policy. Florida law is well-settled that it is the language of an insurance policy that controls and not the expectations of the parties to the insurance policy. See Deni Associates of Fla., 711 So. 2d at 1138. Simply put, those cases cited by Coker on pages 19-20 of her motion for summary judgment all concern interpretation of insurance policies with language different

14

than the language in the policies State Farm issued to Coker thus those cases have no instructive value to the issues in the case sub judice.

Coker argues that "[f]inding coverage under these facts . . . . comports with the purpose of a non-owned auto clause," (Doc. 46, p. 19), and then provides a string citation to cases for the proposition that "the purpose of a non-owned automobile clause is to cover the insured while engaged in infrequent and casual use of an automobile other than one described in the policy." (Doc. 46, p. 19). None of the cases cited by Coker, however, interprets the language at issue in this case. Rather, as shown in the columns below, in each case cited by Coker the policy language at issue differed from the clause in the State Farm policies at issue in the case sub judice.

| **Cited Case** | **Policy Language** |
| --- | --- |
| Lancer v. Gomez | "those autos you do not own, lease, hire, rent or borrow . . ." |
| Budget v. State Farm | though involving a State Farm policy the clause at issue in this case was not at issue in that case as that opinion concerned use of a rental car |
| United States Sugar v. Nationwide | "protection does not extend to losses: . . . . (b) occurring while the [nonowned] care is furnished to you or a member of your household for regular use" |
| Henigson v. Davis | "non-owned automobile means a . . . vehicle . . . which . . . is not owned by or furnished or available for the regular use of either the named insured or any relative . . . ." |

15

| | |
|---|---|
| GEICO v. Nelson | car "furnished for regular use" |
| Factory Mut. v. Continental Cas. Co. | any motor vehicle "furnished for regular use to either the named insured . . ." |
| State Farm v. Robinson | "regular or frequent use" |

In fact, as argued on pages 21-22 of State Farm's motion for summary judgment (Doc. 47, pgs. 21-22), the longer the truck remained in Coker's possession the odds of a casualty increased. This is not a situation where someone was borrowing another's automobile to make a brief trip to the store. Rather, this was essentially a bailment arrangement between Coker and Osborne for the storage and safe keeping of his truck over a several month period. It was essentially inevitable that Coker would operate the Osborne truck at some point over this period of time thus increasing the risk of a casualty.

**E.  Coker Admits That She Was In Lawful Possession of the Osborne Truck on the Date of Accident Which Is An Admission of Possession of the Truck for the 42 Consecutive Days Prior to the Accident Because the Nature of Her Personal Charge of, and Her Management or Control Over the Truck Was the Same on the Days Before the Accident As They Were on the Date of Accident.**

To navigate the contradictory positions: 1) that she had possession of the vehicle on November 9, 2008; or 2) she did not have possession of it between September 24, 2008, and November 9, 2008, Coker argues that "she merely had custody of the truck until the day she actually drove it," and "[s]he did not feel she had the right to generally drive Osborne's truck," and "[s]he drove it on the day of accident solely to move it out of her

16

driveway so that she could clean out her garage." (Doc. 46 at p. 10). As previously alluded to, the problem with Coker's argument in this regard is that the nature of her personal charge of her management or control over the Osborne truck was the same on the date she operated the truck as on the dates that it sat idle in her driveway. It was only a random fortuitous decision to clean out her garage on November 9, 2008, which caused her to operate the truck on that date. That could have happened on Saturday, November 8, 2008, or Friday, November 7, 2008, or Thursday, November 6, 2008. It is not merely the fact that she took her own key on November 9, 2008, and placed it in the ignition of the truck and moved the truck to give her possession over the vehicle. Rather it is the nature of her personal charge and her management and control over the vehicle. Those remain the same on the date of the accident as on the 42 consecutive days before the accident. On each of those days she had a key to the truck. On each of those days the truck sat in her driveway. On each of those days she could have made a decision to move the truck for whatever reason she needed to move it, be it to clean out her garage or move it so that she could place another vehicle on that portion of her driveway. On each of those days the Osborne truck was there because Osborne specifically left it with her because he specifically trusted her. There is nothing different about her having personal charge of or management or control over it on each of the 42 consecutive days prior to November 9, 2008, as there was on November 9, 2008. Thus, if Coker contends that she was in lawful possession of it on November 9, 2008, then she was also in possession of it for each of the 42 consecutive days prior to November 9, 2008.

## CONCLUSION

For the reasons set forth herein Coker's motion for summary judgment should be

17

denied.

Respectfully submitted this 17th day of February, 2012.

_____
Thomas C. Smith, Esquire
Florida Bar No. 0154652
TCS@Hassell-Legal.com
Hassell, Moorhead & Carroll
1616 Concierge Boulevard, Suite 100
Daytona Beach, FL 32117
Tel: (386) 238-1357
Fax: (386) 258-7406
Counsel for Plaintiff STATE FARM

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing has this 17th day of February, 2012, been furnished through the CM/ECF system to Chris Ballentine, Esquire, (counsel for Coker), Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., 20 North Orange Avenue, Suite 1500, Post Office Box 712, Orlando, Florida 32802, and to John V. Colvin, Esquire, (counsel for Keels), Mooney Colvin, PL, Post Office Box 2569, Orlando, Florida 32802-2569, and a copy of this motion was provided via United States mail to James David Osborne, 2857 Robelleni Palm Drive, Lot 96, Avon Park, FL 33825-8225 and Post Office Box 7088, Avon Park, Florida 33826.

_____
Thomas C. Smith, Esquire
Florida Bar No. 0154652
TCS@Hassell-Legal.com
Hassell, Moorhead & Carroll
1616 Concierge Boulevard, Suite 100
Daytona Beach, FL 32117